UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIANA HAUCK, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ADVANCED MICRO DEVICES, INC.,<br><br>    Defendant. | Case No. 18-CV-00447-LHK<br><br>**ORDER GRANTING-IN-PART, DENYING-IN-PART, AND DENYING-IN-PART AS MOOT DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 64 |

Plaintiffs Diana Hauck, Shon Elliott, Michael Garcia, JoAnn Martinelli, Benjamin Pollack, Jonathan Caskey-Medina bring suit individually and on behalf of various putative classes (collectively, "Plaintiffs") against Defendant Advanced Micro Devices, Inc. ("AMD"). Plaintiffs assert a multitude of claims relating to AMD's manufacture and sale of central processing units ("CPUs" or "processors") that purportedly contain cybersecurity flaws exposing the processors to attack. Before the Court is AMD's motion to dismiss. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS in part, DENIES in part, and DENIES in part as moot AMD's motion to dismiss.

**I. BACKGROUND**

1

Case No. 18-CV-00447-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART, AND DENYING-IN-PART AS MOOT DEFENDANT'S MOTION TO DISMISS

### A. Factual Background

Defendant AMD designs, manufactures, sells, and distributes CPUs. *See* ECF No. 53 (Consolidated Amended Complaint, or "CAC") at ¶ 27. AMD's processors are incorporated into end consumer products such as computers and servers, and are also sold as stand-alone items. *Id.* at ¶ 32. CPU speed is an element of a consumer's decision to purchase either the stand-alone item or an end consumer product like a computer, as sufficient processing speed is necessary to effectively operate a computer's software programs and hardware. *Id.* at ¶ 39.

CPU speed is measured in terms of clock speed. *Id.* at ¶ 40. The greater the clock speed, the greater the CPU's processing speed. *Id.* Without needing to delve into too much technical detail, in order to increase clock speed, modern processors usually implement two techniques called branch prediction and speculative execution. *Id.* at ¶ 37. It is AMD's implementation of these two techniques in its products that expose users to a security risk called Spectre, which currently has four known variants. *Id.* at ¶¶ 58, 67. A Spectre attack could result in sensitive data falling into the wrong hands—for instance, passwords or sensitive information from computer applications. *Id.* at ¶ 61. Plaintiffs allege that AMD became aware of Spectre on June 1, 2017 at the latest when an outside group alerted AMD to the security risk. *Id.* at ¶ 84. Plaintiffs claim that had they known about Spectre, they would not have purchased the computers or chips or would have paid less for them. *Id.* at ¶¶ 21-26. However, with the exception of Massachusetts Plaintiff Jonathan Caskey-Medina, who purchased his computer on January 6, 2018, the remaining named Plaintiffs bought the AMD products before AMD allegedly became aware of Spectre on June 1, 2017. *Id.* Plaintiffs also claim that "patches" which provide fixes to Spectre significantly reduce processing speed, and thus create "corresponding performance slowdowns." *Id.* at ¶ 19.

### B. Procedural History

On January 1, 2019, Plaintiffs filed this action in federal court. ECF No. 1. On April 9, 2018, this case was consolidated with and related to two later-filed related cases. ECF No. 37. The Plaintiffs were then ordered to file a consolidated amended complaint, which they did on June 13, 2018. ECF No. 53.

2

Case No. 18-CV-00447-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART, AND DENYING-IN-PART AS MOOT DEFENDANT'S MOTION TO DISMISS

In the CAC, Plaintiffs allege 25 causes of action, all relating to the alleged harm suffered by the named Plaintiffs and the putative classes in purchasing AMD chips or products containing them. Below is a chart summarizing the relevant details of each of the named Plaintiffs:

| Name | State | Date of Purchase |
|---|---|---|
| Diana Hauck | Louisiana | November 4, 2016 |
| Shon Elliott | California | April 21, 2016 |
| Michael Garcia | California | April 21, 2016 |
| JoAnn Martinelli | California | July 6, 2013 |
| Benjamin Pollack | Florida | September 26, 2014 |
| Jonathan Caskey-Medina | Massachusetts | January 6, 2018 |

Plaintiffs seek to represent a Nationwide Class of "[a]ll persons that purchased or leased one or more AMD processors, or one or more devices containing an AMD processor in the United States within the applicable statute of limitations." CAC at ¶ 120. Plaintiffs also seek to represent various state classes. *Id.*

Given the extensiveness of the claims in the CAC, pursuant to the Court's case management order, ECF 50, Plaintiffs elected to proceed with four causes of action to litigate, ECF No. 54: (1) Count III—violation of California's Unfair Competition Law ("UCL") for unfair business practices, Cal. Bus. & Prof. Code § 17200 *et seq.*, *id.*, (2) Count V—fraud by omission, *id.*, (3) Count XI—violation of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*, *id.*, and (4) Count XIX—violation of the Massachusetts Consumer Protection Act ("MCPA"), Mass. Gen. Laws ch. 93A § 1, *et seq.*, *id.* Also pursuant to the Court's case management order, ECF 50, AMD identified four causes of action to litigate, ECF No. 61: (1) Count VII—breach of express warranty based on representations, Cal. Comm. Code § 2313, *id.*, (2) Count VIII—breach of implied warranty, Cal Comm. Code §§ 2314-15, *id.*, (3) Count X—negligence, *id.*, and (4) Count XVII—warranty against redhibitory defects, La. Civ. Code Ann. Art. 2520, 2524, *id.*

3

On July 13, 2018, AMD filed a motion to dismiss. ECF No. 64 ("Mot."). AMD seeks to dismiss Plaintiffs' claims under: (1) Count IV—violation of California's UCL for fraud,[1] Mot. at 1, (2) Count XI (FDUTPA), *id.*, (3) Count XIX (MCPA), *id.*, (4) Count V (fraud by omission), *id.*, (5) Count VII (breach of express warranty based on representation), *id.*, (6) Count VIII (breach of implied warranty), *id.*, (7) Count XVII (Louisiana redhibition claim), *id.*, and (8) Count X (negligence), *id*. Plaintiffs' opposition was filed on September 4, 2018. ECF No. 73 ("Opp."). AMD replied on September 25, 2018. ECF No. 75 ("Reply"). On September 4, 2018, Plaintiff Jonathan Caskey-Medina voluntarily dismissed without prejudice Count XIX, the MCPA claim. ECF No. 72. No other named Plaintiff asserts a MCPA claim. *Id.*

Relatedly, AMD requests that the Court take judicial notice of two documents: a website showing that AMD has an office in Massachusetts and another website displaying the text of the limited warranty of AMD's stand-alone processors. ECF No. 65 at 1. This request is opposed by the Plaintiffs. *See generally* ECF No. 74. In its ruling on the motion to dismiss, the Court has not relied upon any of the documents in AMD's request for judicial notice. Therefore, the Court denies as moot AMD's Request for Judicial Notice in Support of Motion to Dismiss.

## II.    LEGAL STANDARD

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a

---

[1] Neither party elected to litigate this claim at this stage. *See* ECF Nos. 54, 61.

probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Motion to Dismiss Under Federal Rule of Civil Procedure 9(b)**

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v.*

5

*Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The plaintiff must also plead facts explaining why the statement was false when it was made. *See In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.,* 927 F. Supp. 1297 (C.D. Cal. 1996).

"When an entire complaint … is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint … ." *Vess*, 317 F.3d at 1107. The Ninth Circuit has recognized that "it is established law in this and other circuits that such dismissals are appropriate," even though "there is no explicit basis in the text of the federal rules for the dismissal of a complaint for failure to satisfy 9(b)." *Id.* A motion to dismiss a complaint "under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

### C. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

The Court addresses each of the counts in turn: (1) Count IV—violation of California's UCL for fraud, (2) Count XI (FDUTPA), (3) Count XIX (MCPA), (4) Count V (fraud by omission), (5) Count VII (breach of express warranty based on representation), (6) Count VIII (breach of implied warranty), (7) Count XVII (Louisiana redhibition claim), and (8) Count X (California negligence claim). At a high level, the claims fall into 4 buckets: (1) fraud claims, (2) warranty claims, (3) the Louisiana redhibition claim, and (4) the California negligence claim.

As a preliminary matter, Plaintiffs note that because neither party elected to litigate Count IV, violation of California's UCL for fraud, at this stage, AMD's motion to dismiss this count is not proper. Opp. at 5. The Court agrees. Litigating a count that neither party elected to dispute at this point would violate the Court's Case Management Order. *See* ECF No. 50 at 1 ("The Court will first adjudicate eight causes of action through summary judgment. Each side shall select four causes of action to litigate."). Moreover, AMD concedes in its reply that AMD's belief that Plaintiffs selected Count IV was an unintentional error. Reply at 2 n.1. Thus, the motion to dismiss as to Count IV is DENIED without prejudice. Second, in light of Plaintiff Jonathan Caskey-Medina's voluntary dismissal of Count XIX, the MCPA claim, the motion to dismiss Count XIX is DENIED as moot. ECF No. 72. Accordingly, six counts remain for resolution in the pending motion.

**A. Fraud Claims**

The Court turns next to address Plaintiffs' two remaining consumer fraud claims. As relevant to the motion to dismiss, and ignoring the fraud claims the Court has already dealt with above (the MCPA and the UCL claims), Plaintiffs assert a FDUTPA and a fraud by omission claim.

**1. Florida Deceptive and Unfair Trade Practices Act (FDUTPA)—Misrepresentations**

As an initial matter, the parties dispute whether the FDUTPA is subject to the heightened Fed. Rule of Civ. Pro. 9(b) pleading standard. Opp. at 6; Reply at 2. A FDUTPA claim has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."

7

Case No. 18-CV-00447-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART, AND DENYING-IN-PART AS MOOT DEFENDANT'S MOTION TO DISMISS

*Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 167 (Fla. Dist. Ct. App. 2015) (quoting *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009)). Plaintiffs argue that the FDUTPA is not subject to Rule 9(b) pleading standards because the FDUTPA was enacted to remedy conduct "outside the reach of common law torts like fraud[.]" Opp. at 6 (quoting *Toback v. GNC Holdings, Inc.*, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013)). AMD disagrees because Plaintiffs' claim sounds in fraud, and Rule 9(b) is the pleading standard for claims that do so. Mot. at 7, 7 n.5.

Courts have acknowledged that there is a split of authority among the Florida courts as to whether Rule 9(b) applies to FDUTPA claims. *See, e.g.*, *Harris v. Nordyne, LLC*, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 14, 2014) ("Indeed, courts within this District are split on the issue."). Nevertheless, this Court applies Ninth Circuit law, which requires Rule 9(b)'s heightened pleading standards be applied to entire claims that sound in fraud even if fraud is not an element of the claim. *Vess*, 317 F.3d at 1103-04. Thus, this Court finds that the heightened pleading standards of Rule 9(b) apply to Plaintiffs' FDUTPA claim because the FDUTPA claim alleges that AMD engaged in fraud. CAC at ¶ 295 ("Defendant violated FDUPTA by . . . fraudulently concealing the existence of the Defect in its processors.").

Having determined that Rule 9(b) is applicable here, the Court will next consider the substance of the motion to dismiss the FDUTPA claim. AMD argues that Plaintiffs fail to identify any of AMD's statements that Plaintiffs allege were false other than generally alleging that the purchasers relied upon AMD's advertised clock speed. Mot. at 8; *see also* CAC at ¶¶ 21-26. Plaintiffs claim the advertised clock speed is misleading because the fix for the Defect results in an alleged slowdown in processor performance. *Id.* Plaintiffs also argue that "a reasonable consumer would not purchase (or would pay a substantially lesser amount for) a processor that can only reach its advertised clock speed by rendering the consumer's sensitive data vulnerable to attackers." Opp. at 9. Furthermore, Plaintiffs state that AMD should have taken steps to prevent the processors from being vulnerable to attack at the advertised clock speeds. *Id.*

8

AMD has the better argument for two reasons. First, Plaintiffs fail to plead with sufficient particularity what exactly constitutes the Defect. Second, Plaintiffs fail to plead facts explaining why the representations of clock speed were false.

First, "[a]llegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged . . . ." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Claims sounding in fraud must allege "an account of the time, place, and *specific content* of the false representations as well as the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 764 (emphasis added). Here, Plaintiffs fail to define with particularity what the Defect is. Thus, the CAC is unclear as to the specific content of the alleged misrepresentations. For example, the CAC defines "Defect" as "20 years" of "serious security vulnerabilities . . . which allows hackers to steal sensitive data." CAC at ¶ 1. Subsequently, Plaintiffs allege that "Defendant knowingly sold or leased a defective product without informing customers about the *Spectre Defect*." *Id.* at ¶ 484 (emphasis added). Then, Plaintiffs claim that "the Defect is ***not*** the security attack (Spectre); the Defect is the security vulnerabilities created by AMD's design." Opp. at 1 (emphasis in original). However, Plaintiffs fail to identify what security vulnerabilities affected AMD's processors for the last 20 years other than Spectre and fail to explain how AMD's design created those vulnerabilities. Given Plaintiffs' vague and inconsistent definitions of Defect, AMD can hardly be expected to know exactly what the contents of its alleged misrepresentations are. Thus, Plaintiffs' definition of Defect fails to meet the requirement that the *specific content* of the false representation be identified, per *Swartz*. Additionally, because Plaintiffs' pleadings are unclear, AMD cannot meaningfully respond to the allegations because AMD was not given clear notice of its alleged fraudulent conduct. Thus, the FDUTPA claim fails to meet Rule 9(b)'s heightened pleading standard.

Second, Plaintiffs also fail to plead facts explaining why the statements about clock speed were false when they were made. *See In re GlenFed, Inc. Sec. Litig.,* 42 F.3d at 1549 ("[A]

9

Case No. 18-CV-00447-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART, AND DENYING-IN-PART AS MOOT DEFENDANT'S MOTION TO DISMISS

plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading *when made*" (emphasis in original).). After all, no Plaintiff disputes the fact that the AMD processors could reach their advertised clock speeds. Also, "Plaintiffs never identify any basis (reasonable or otherwise) for their supposed understanding that the clock speed also constituted a 'promise' that processors would be immune to security threats." Reply at 5. Consequently, Plaintiffs' FDUTPA claim for fraudulent misrepresentation fails to meet Rule 9(b)'s heightened pleading standards. Therefore, the Court grants AMD's motion to dismiss the FDUTPA claim. Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice AMD, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

### 2. California Fraud by Omission

The Court now turns to Count V, fraud by omission. Under California law, a manufacturer must have known of the defect at the time of sale for a plaintiff to state a claim for fraud by omission against the manufacturer. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017) ("[A] party must allege . . . that the manufacturer knew of the defect at the time a sale was made.") (citing *Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, at *9 (C.D. Cal. Nov. 8, 2013)).

AMD argues that it did not know about the Defect until after the California Plaintiffs' purchases. Mot. at 2, 9. Thus as a matter of law, AMD cannot be expected to disclose what AMD did not know at the time of sale. *Id.* at 9. Plaintiffs respond with two arguments. First, Plaintiffs argue that Rule 9(b) does not apply to allegations about a defendant's state of mind. Opp. at 14. Thus, the CAC's allegations[2] are sufficient to show that AMD knew or ought to have known about the Defect before the Plaintiffs purchased the AMD products. *Id*. Second, Plaintiffs contend that AMD set up a straw man to attack. Plaintiffs claim that AMD "responds to attacking the claim it

---

[2] Other than an allegation that on June 1, 2017, security researchers informed AMD of the Defect, CAC at ¶ 84, Plaintiffs' other allegations broadly describe how industry researchers have been discussing the potential processor security vulnerabilities since 2005, Opp. at 14.

10
Case No. 18-CV-00447-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART, AND DENYING-IN-PART AS MOOT DEFENDANT'S MOTION TO DISMISS

wished Plaintiffs had asserted—namely that the Defect is the security attack (Spectre) and not the security vulnerabilities inherent in AMD's CPUs . . . ." *Id.* at 15.

Once again, AMD has the better argument. Plaintiffs do not actually allege actual knowledge of the Defect prior to when Plaintiffs purchased the AMD processors or computers (with the sole exception of the Massachusetts Plaintiff, Jonathan Caskey-Medina). Moreover, Plaintiffs can only point to vague, sweeping statements about industry research and general knowledge garnered from conferences and academic papers of the Defect's *potential* to exploit processors and gather confidential information. Opp. at 14.

The Ninth Circuit has held that "a party must allege . . . that the manufacturer knew of the defect at the time a sale was made." *Williams*, 851 F.3d at 1025. The Ninth Circuit has also held that even limited knowledge of a defect might not give rise to the actual knowledge required to state a fraud by omission claim. In *Wilson v. Hewlett-Packard Co.*, knowledge of customer complaints and a separate lawsuit based on the same defect in a different product model were insufficient to demonstrate the manufacturer's knowledge of a defect. 668 F.3d 1136, 1146 (9th Cir. 2012). Moreover, it is not enough to allege that a defendant *should have known* about a defect from general knowledge. *Morris v. BMW of N. Am., LLC*, 2007 WL 3342612, at *6 (N.D. Cal. Nov. 7, 2007) (holding that allegations that a car manufacturer "should have known" of certain defects were insufficient to sustain a fraud by omission claim). Here, none of the allegations state AMD knew of the Defect before the California Plaintiffs' purchase dates, only that AMD *ought* to have known of the Defect. Thus, under *Williams*, *Wilson*, and *Morris*, AMD does not have the requisite knowledge of the defect for the CAC to state a claim for fraud by omission.

Furthermore, as discussed above, Plaintiffs give multiple definitions of what constitutes the Defect. Thus, AMD cannot meaningfully respond to accusations that it omitted information about the Defect because AMD does not know what the Defect is.

Because the CAC fails to allege AMD's pre-purchase knowledge of the Defect, and fails to identify the Defect and what information about the Defect was false and omitted, Plaintiffs have

11

Case No. 18-CV-00447-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART, AND DENYING-IN-PART AS MOOT DEFENDANT'S MOTION TO DISMISS

failed to sufficiently allege fraud by omission. Therefore, the Court grants AMD's motion to dismiss the fraud by omission claim. Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice AMD, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

## B. Warranty Claims

The Court now turns to the breach of express warranty and implied warranty claims. The Court addresses each in turn.

### 1. California Breach of Express Warranty

To prevail on a breach of express warranty claim under California law, Plaintiffs must prove that Defendants made "affirmations of fact or promise" or a "description of the goods" that became "part of the basis of the bargain." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010); Cal. Com. Code § 2313 (defining express warranty). In particular, "a plaintiff must allege: (1) the exact terms of the warranty, (2) reasonable reliance thereon, and (3) a breach of warranty which proximately caused plaintiff's injury." *Baltazar v. Apple, Inc.*, 2011 WL 588209, at *2 (N.D. Cal. Feb. 10, 2011) (citing *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)). In order to plead the exact terms of the warranty, the plaintiff must "identify a specific and unequivocal written statement about the product that constitutes an explicit guarantee." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1092 (N.D. Cal. 2017) (internal quotations omitted).

AMD prevails for two reasons. First, Plaintiffs fail to plead that a warranty was created because the exact terms of the warranty are not identified. Second, even assuming a warranty was breached, the Plaintiffs were not harmed by the breach.

First, the CAC fails to disclose the exact terms of the warranty Plaintiffs claim were breached. Claims in products' promotional materials do not necessarily create an express warranty. In *In re Sony PS3 Other OS Litig.*, the defendant stated in promotional materials that the

12
Case No. 18-CV-00447-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART, AND DENYING-IN-PART AS MOOT DEFENDANT'S MOTION TO DISMISS

device, a PlayStation 3, would have a "ten year life cycle" and that it would "be a console that's going to be with you again for 10 years." 828 F. Supp. 2d 1125, *rev'd on other grounds by In re Sony PS3 Other OS Litig.*, 551 Fed. App'x 916, 919 (9th Cir. 2014). The Ninth Circuit held that the promotional materials did not include all the "exact terms" of a warranty and thus did not constitute an express warranty. *In re Sony PS3 Other OS Litig.*, 551 Fed. App'x at 919. Here, Plaintiffs argue that "the processors Plaintiffs purchased, including their clock speed, were prominently displayed either next to an in-store sample of the computer purchased, on the product's packaging, or on an on-line retailer's webpage." Opp. at 18. Plaintiffs believe that the computer's clock speed formed part of an express warranty. Plaintiffs also believe that part of that warranty is a promise from the AMD website stating that AMD processors "help[] ensure the secure storage and processing of sensitive data and trusted applications." *Id.* However, neither statement rises to the level of an express warranty. Here, as in the *Sony PS3* litigation, there is no "specific and unequivocal written statement [in the pleadings] about the product that constitutes an explicit guarantee." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d at 1092. Thus, the Court finds that Plaintiffs have failed to plead the exact terms of the warranty. This defeats the breach of express warranty claim.

Regarding AMD's statement that the processor "helps ensure the secure storage and processing of sensitive data and trusted applications," Opp. at 18, Plaintiffs can suffer no harm from the statement because that statement is puffery. "Puffing has been described by most courts as involving outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). One example of puffery is the following: "We ask you: Would you prefer to do business with the phone company with the best technology, lower rates, and better customer service?" *Id.* (internal quotation marks omitted). This example of puffery is akin to AMD's statement regarding the secure storage and processing of data. Both statements are broad claims regarding product benefits, and give no specifics as to how they are

13

Case No. 18-CV-00447-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART, AND DENYING-IN-PART AS MOOT DEFENDANT'S MOTION TO DISMISS

achieved. Both statements contain unsubstantiated promises without more detailed explanations. *See, e.g.*, *Edmundson v. Procter & Gamble Co.*, 537 Fed. App'x 708, 709 (9th Cir. 2013) (holding that product claims that are "general, subjective, and cannot be tested" constitute puffery). Therefore, the Court grants AMD's motion to dismiss the breach of express warranty claim. Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice AMD, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

### 2. California Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose

The Court now turns to Plaintiffs' California claims of (1) breach of the implied warranty of merchantability, and (2) breach of the implied warranty of fitness for a particular purpose. CAC at ¶¶ 247-48.

#### a. California Breach of Implied Warranty of Merchantability

Among other elements, the California implied warranty of merchantability requires that a product is "fit for the ordinary purpose for which such goods are used." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003). "[A] breach of the implied warranty [of merchantability] means the product did not possess even the most basic degree of fitness for ordinary use." *Id.* at 406.

AMD has two arguments as to why the warranty of merchantability claim fails. First, AMD argues that Plaintiffs' claim fails because the Plaintiffs have not pled that the Defect rendered their purchased products unfit for their ordinary purpose. Mot. at 18. Second, AMD argues that the warranty of merchantability claim fails because there was no vertical contractual privity between AMD and the Plaintiffs. *Id.* Plaintiffs respond by arguing that the Defect caused the processors to be vulnerable to attack, which required fixes that degrade the processors' clock speed which interfered with the Plaintiffs' abilities to use their computers for their ordinary purpose. Opp. at 21.

The Court need only address AMD's first argument, which the Court finds persuasive and

14
Case No. 18-CV-00447-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART, AND DENYING-IN-PART AS MOOT DEFENDANT'S MOTION TO DISMISS

dispositive. Courts have held that to state a claim that a product is unfit to be used for its ordinary purpose, a plaintiff must allege that the product's operability be seriously impacted by the defect. *Troup v. Toyota Motor Corp.*, 545 Fed. App'x 668, 669 (9th Cir. 2013) (holding that a Prius vehicle was fit for its ordinary purpose because a defect did not "compromise the vehicle's safety, render it *inoperable*, or *drastically reduce* its mileage range" (emphasis added)); *see also Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014) (rejecting plaintiff's implied warranty claim because "[plaintiff] has not alleged that [the product] failed to work at all or even that it failed to work *a majority of the time*" (emphasis added)). Similarly here, whether the Defect is Spectre, security vulnerabilities created by AMD's design, or "20 years" of "serious security vulnerabilities," CAC at ¶ 1, the CAC contains no allegation that the basic functionality of the processors has been compromised by the Defect. Plaintiffs do not allege that the Defect compromises the AMD processors' safety, renders them inoperable, or drastically reduces their functionality as in *Troup*. Plaintiffs do not allege that the AMD processors fail to work at all, or fail to work even a majority of the time as in *Minkler*. In fact, Plaintiffs make no allegations about the performance of AMD's processors at all, other than stating that patches to fix the Spectre security risk decrease clock speed.

In the instant case, the Plaintiffs' "ballpark figure of five to 30 per cent slow down" after patching the computer, CAC at ¶ 93, does not rise to the level of a serious enough defect to render the processors unfit for their ordinary purpose. This is because patching the Defect does not implicate the AMD processors' operability as computer processors, much like how the Prius' reduced mileage in the *Troup* case did not render the Prius unfit for its ordinary purpose. The AMD processors are certainly still operable even assuming they are patched, though the processors may be a little less efficient, much like the Priuses in *Troup*. Plaintiffs have made no allegations suggesting otherwise. As such, Plaintiffs here have failed to allege that the AMD processors did not have a basic degree of fitness for ordinary use. Thus, Plaintiffs fail to state a claim for breach of implied warranty of merchantability. Because granting Plaintiffs an additional

15

Case No. 18-CV-00447-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART, AND DENYING-IN-PART AS MOOT DEFENDANT'S MOTION TO DISMISS

opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice AMD, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

### b. **California Breach of Implied Warranty of Fitness for a Particular Purpose**

Turning to the implied warranty for a particular purpose, Plaintiffs claim that "AMD impliedly warranted to customers that its CPUs were fit for a particular standard of security that would protect users' confidential information." Opp. at 23. AMD asserts that Plaintiffs have failed to show how the particular purpose differs from the ordinary purpose for which the Plaintiffs bought the products in question. Mot. at 19.

AMD has the better argument. To state a claim for a breach of the implied warranty of fitness for a particular purpose, a plaintiff must allege "(1) the purchaser at the time of contracting intends to use the goods for a particular purpose, (2) the seller at the time of contracting has reason to know of this particular purpose, (3) the buyer relies on the seller's skill or judgment to select or furnish goods suitable for the particular purpose, and (4) the seller at the time of contracting has reason to know that the buyer is relying on such skill and judgment." *Punian v. Gillette Co.*, 2016 WL 1029607, at *18 (N.D. Cal. Mar. 15, 2016) (quoting *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1021 (N.D. Cal. 2014)). "A 'particular purpose' differs from 'the ordinary purpose for which the goods are used' in that it 'envisages a specific use by the buyer which is peculiar to the nature of his business, whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability . . . .'" *Smith v. LG Elecs. U.S.A., Inc.*, 2014 WL 989742, at *7 (N.D. Cal. Mar. 11, 2014) (quoting *Am. Suzuki Motor Corp. v. Superior Ct.*, 37 Cal. App. 4th 1291, 1295 n.2 (1995)).

Here, Plaintiffs allege that they "intended to use those processors in a manner requiring a particular standard of security and performance . . . ." CAC at ¶ 248. However, this is no different from Plaintiffs' expectations regarding the ordinary purpose of the purchased computers or chips because Plaintiffs' basic accusation in the instant case is that the Defect could result in security

16

Case No. 18-CV-00447-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART, AND DENYING-IN-PART AS MOOT DEFENDANT'S MOTION TO DISMISS

breaches. It is not as though Plaintiffs lacked the expectation of computer security under the ordinary purpose in which the processors were used. *See, e.g.*, CAC at ¶ 250 ("AMD processors . . . are not fit for the ordinary purpose due to the Defect, and the associated problems and failures by the Defect."). Thus, Plaintiffs' ordinary purpose of use of the processors does not differ from their particular purpose of use because under both, Plaintiffs claim to expect a standard of security and performance. Furthermore, Plaintiffs fail to allege that the Plaintiffs relied upon the seller's skill or judgment to select the processors suitable for this purchase, or that the seller knew the buyer was relying on the seller's skill and judgment. These are some of the other required factors to state a claim for a breach of the implied warranty of fitness for a particular purpose. *See Punian*, 2016 WL 1029607, at \*18.

Therefore, the Court grants AMD's motion to dismiss the breach of the implied warranty of fitness for a particular purpose claim. Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice AMD, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

### C. Louisiana Redhibition Claim

The Court now turns to Plaintiffs' redhibition claim under Louisiana law. A redhibitory defect is one in which the defect "renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." La. Civ. Code Ann. Art. 2520. Furthermore, a defect is redhibitory when the defect diminishes a product's usefulness or value so that a buyer would have bought it at a reduced price, or not at all. *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 899 (5th Cir. 2010).

Plaintiff Diana Hauck is the only Louisiana Plaintiff. AMD argues that Ms. Hauck has failed to allege a redhibitory defect because she fails to allege that the Defect diminished the usefulness of her computer or rendered it inconvenient. Likewise, Ms. Hauck fails to allege that her computer fails to achieve the advertised clock speed, or that fixes to the Defect resulted in a

diminished clock speed. Plaintiffs' response is that the redhibition claim is well pled because the CAC alleges that Ms. Hauck would not have purchased the computer at all, or would have done so at a reduced price, had she known of the Defect. CAC at ¶ 21.

Here, AMD has the better argument. Ms. Hauck alleged that "she would not have purchased the computer, or paid substantially less for her computer" had she known of the Defect. *Id.* But, such a pleading is entirely conclusory because Ms. Hauck merely parrots the elements of the redhibition cause of action. Under *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678. Ms. Hauck does not allege anything other than the elements of a redhibition claim. Therefore, the Court grants AMD's motion to dismiss the redhibition claim. Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice AMD, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

### D. California Negligence Claim

To state a negligence claim under California law, a plaintiff must establish (1) duty, (2) breach of duty, (3) causation, and (4) damages. *Merill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (Cal. 2001). However, "[p]laintiffs asserting negligence claims ordinarily may not recover purely economic damages unconnected to physical injury or property damage. . . . Economic losses include damages for inadequate value, costs of repair, loss of expected proceeds, loss of use, loss of goodwill, and damages paid to third parties." *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *5 (N.D. Cal. Sept. 14, 2016). This is the economic loss doctrine. But "California decisional law has long recognized that the economic loss rule does not necessarily bar recovery in tort for damage that a defective product . . . causes to other portions of a larger product . . . into which the former has been incorporated." *In re Sony Vaio Computer Notebook Trackpad Litig.*, 2010 WL 4262191, at *6 (S.D. Cal. Oct. 28, 2010) (quoting *Jimenez v. Superior Ct.*, 29 Cal. 4th 473, 483 (2002)). Nonetheless, if the damage to the larger product were "closely related" to the

18

Case No. 18-CV-00447-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART, AND DENYING-IN-PART AS MOOT DEFENDANT'S MOTION TO DISMISS

nature of the defect, then the economic loss doctrine still prevents recovery. *Id.* In other words, "[w]hen the defect and the damage are one and the same, the defect may not be considered to have caused physical injury." *KB Home v. Superior Ct.*, 112 Cal. App. 4th 1076, 1085 (2003) (internal quotations omitted) (citing *Sacramental Regional Transit Dist. v. Grumman Flxible*, 158 Cal. App. 3d 289, 294 (1984)).

AMD argues that the economic loss doctrine bars Plaintiffs' claims because Plaintiffs have not alleged physical injury or property damage. Mot. at 23. Plaintiffs respond by saying that they have alleged property damage to the computers that contained the processors. Opp. at 24.

AMD prevails here. Plaintiffs fail to direct the Court to any allegation of damage to the computers. *Id.* at 24. Additionally, the processor is integrally tied to the computer. *See, e.g.*, CAC at ¶ 3 ("CPUs are the 'brains' of the devices they power. Processors fetch, decode, and execute instructions from software programs or applications . . . ."). Thus, any damage a computer might have suffered from an attack is closely related to Spectre (or whatever Plaintiffs claim the Defect is), so close that they are inherently one and the same. A Spectre attack on the processor *is* what causes damage to the computer. A degradation in clock speed after patching the computer with a Spectre fix *is* the same as the degradation of the computer's processing speed. As such, it makes no sense to analytically separate the processors here from the computers they are in. Moreover, a reduction in *performance* of the processor is not necessarily damage to the computer itself because the patches do not damage the computer; a slowdown in processing speed can hardly be compared to actual property damage to the computer as required by law. *See KB Home*, 112 Cal. App. 4th at 1085 ("For example, in *Sacramento Regional Transit Dist. v. Grumman Flxible* . . . the court rejected any products liability recovery because the plaintiff had failed to allege physical injury to its property apart from the manifestation of the defect itself" (internal quotation and citation omitted).). Therefore, the Court grants AMD's motion to dismiss the negligence claim. Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice AMD, and Plaintiffs have not acted in bad faith, the Court grants

19

Case No. 18-CV-00447-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART, AND DENYING-IN-PART AS MOOT DEFENDANT'S MOTION TO DISMISS

leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss with leave to amend as to (1) Count XI (FDUTPA), (2) Count V (fraud by omission), (3) Count VII (breach of express warranty based on representation), (4) Count VIII (breach of implied warranty), (5) Count XVII (Louisiana redhibition claim) and (6) Count X (California negligence claim). The Court DENIES without prejudice the motion to dismiss as to (7) Count IV (violation of California's UCL for fraud) because neither party elected to litigate this count at this point in time. The Court DENIES as moot the motion to dismiss as to (8) Count XIX (MCPA) because Massachusetts Plaintiff Jonathan Caskey-Medina voluntarily withdrew the MCPA claim.

Should Plaintiffs elect to file an amended complaint curing the deficiencies identified herein, Plaintiffs shall do so within 30 days. Failure to file an amended complaint within 30 days or failure to cure the deficiencies identified in this Order will result in dismissal with prejudice of the claims dismissed in this Order. Plaintiffs may not add new causes of actions or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: October 29, 2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

Case No. 18-CV-00447-LHK
ORDER GRANTING-IN-PART, DENYING-IN-PART, AND DENYING-IN-PART AS MOOT DEFENDANT'S MOTION TO DISMISS